[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10690

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SANTIAGO ALIRIO GOMEZ RIVERA,
a.k.a. Venko,
RAFAEL SEGUNDO CASTRO DIAZ,
a.k.a. Rafa,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:17-cr-20887-KMM-5

––––––––––––––––––––––

Before JORDAN and BRASHER, Circuit Judges, and GERAGHTY,* District Judge.

BRASHER, Circuit Judge:

There are two ways for a superseding indictment to be timely under a statute of limitations. First, it may allege charges that are independently timely—that is, the alleged charges occurred within the applicable statute of limitations based on the date the superseding indictment was returned. Second, it may make new allegations that "relate back" to an earlier indictment because the new charges do "not broaden or substantially amend the original [timely] charges." *United States v. Italiano*, 894 F.2d 1280, 1282 (11th Cir. 1990). The question in this case is whether a superseding indictment that brings timely charges must nonetheless be dismissed as untimely if it "broadened or substantially amended" the initial charges. We hold that it does not. The two routes for timeliness have an either/or—not a both/and—relationship. None of our language or reasoning in *United States v. Ratcliff*, 245 F.3d 1246 (11th Cir. 2001), or *United States v. Edwards*, 777 F.2d 644 (11th Cir. 1985), should be read to suggest otherwise.

––––––––––––––––––––––

* The Honorable Sarah E. Geraghty, United States District Judge for the Northern District of Georgia, sitting by designation.

## I.

In 2008, Santiago Alirio Gomez Rivera began working with co-conspirators in Latin America to obtain and transport cocaine, with the purpose of importing the cocaine into the United States. As part of his involvement, Gomez Rivera delivered United States currency for the shipped cocaine, and helped a co-conspirator buy a boat named the Manatee. Gomez Rivera was involved in the drug conspiracy from around January 2008 to September 2013.

At some point, Rafael Segundo Castro Diaz got involved in the conspiracy too. Per his trial stipulation, his role was to "help co-conspirators regarding an April 2013 transport of 1,200 kilos of cocaine" to be imported into the United States. To that end, he helped co-conspirators transport cocaine from a house in Colombia to the Manatee in April 2013.

On April 17, 2013, the Manatee departed Colombia with the cocaine on board. But the next day, the United States Coast Guard intercepted the boat. Men aboard who are not defendants in this case were arrested and pleaded guilty to drug conspiracy. *See United States v. Jegge*, Case No. 1:13-cr-20330-JIC (S.D. Fla. 2013).

Years later, a federal grand jury returned three indictments. The original indictment, returned on December 14, 2017, charged Gomez Rivera with drug conspiracy. *See* 21 U.S.C. §§ 959(a), 963. It alleged that "[b]eginning on or about March 1, 2013, and continuing until on or about May 20, 2013," Gomez Rivera conspired to distribute cocaine in Colombia, Honduras, and elsewhere, intending for the cocaine to be imported into the United States. The first

superseding indictment, returned on April 17, 2018, charged the same conspiracy but added Castro Diaz and other co-conspirators as defendants, and edited the conspiracy period to begin "in or around March, 2013" and continue "until in or around May, 2013."

The second superseding indictment—the key indictment here—was returned on July 19, 2018. It charged Gomez Rivera and Castro Diaz with the same conspiracy as the previous indictments did, but significantly expanded the conspiracy period: it alleged that the defendants engaged in the conspiracy "[b]eginning in or around January, 2008, and continuing until in or around September, 2013."

Both Gomez Rivera and Castro Diaz moved to dismiss the second superseding indictment. The defendants argued that the indictment violated the statute of limitations because it was returned more than five years after their involvement in the conspiracy allegedly took place and that it materially broadened the scope of the originally charged conspiracy. The government contended that the indictment was timely returned and that there was no need for it to "relate back" to the original indictment. The district court denied the defendants' motions to dismiss, concluding that the second superseding indictment was timely brought and that there was no need to assess whether it substantially amended the original indictment.

The two defendants then negotiated a stipulated bench trial with the government. As a result of the negotiations, both defendants agreed that there was "enough of a factual basis for the Court to find" that they "conspired to distribute" cocaine, "knowing and

intending that it would be unlawfully imported into the United States," in violation of 21 U.S.C. §§ 959 and 963. And they waived their right to a jury trial and the right to request any special findings of fact. But the defendants preserved their right to appeal the court's denial of their motions to dismiss, acknowledging that "a guilty plea might be deemed to be a waiver of [their] statute of limitations defense."

For Gomez Rivera, the parties stipulated that "in or around January, 2008 and continuing until in or around September, 2013, in . . . Colombia, Honduras, and elsewhere," he "helped co-conspirators to facilitate the acquisition, protection, and transportation of multiple-thousand kilograms of cocaine for the purpose of importing said cocaine into the United States." At the bench trial, Gomez Rivera agreed that the government would "be able to prove beyond a reasonable doubt" that "beginning in or around January 28th and continuing until on or around September 13th, September of 2013," he "conspired" to help transport cocaine for import into the United States.

For Castro Diaz, the parties stipulated that his "role in the charged conspiracy was to help co-conspirators regarding an April 2013 transport of 1,200 kilos of cocaine for the purpose of importing said cocaine into the United States." And, at the bench trial, Castro Diaz agreed that he was "part of the conspiracy regarding importing between April 2013, or around April 2013, with transporting 1200 kilos of cocaine into the United States."

At the bench trial, both defendants renewed their pretrial motions to dismiss, and the court denied the renewed motions.

The district court adjudicated the defendants guilty but did so with faulty documentation for Castro Diaz. For Gomez Rivera, the judgment's documentation was clean: the court adjudicated him guilty of "Count 1ss"—the first count of the second superseding indictment—and both the court's written judgment and the docket's text reflected this fact. For Castro Diaz, however, the documentation was inconsistent. On one hand, Castro Diaz's judgment stated that he "was found guilty on Count One of the *Second* Superseding Indictment after a plea of not guilty." (Emphasis added.) On the other hand, that same judgment and parts of the docket (*see* D.E. 104; D.E. 157) suggested that Castro Diaz was adjudicated guilty of "Count 1s," which refers to the first count of the first superseding indictment.

Ultimately, the district court sentenced Gomez Rivera to 135 months' imprisonment followed by five years' supervised release, and Castro Diaz to 70 months' imprisonment followed by five years' supervised release. At sentencing, the defendants reminded the court that they were preserving their pretrial motions to dismiss.

Both defendants appealed, arguing that the district court erred in denying their motions to dismiss the second superseding indictment. For the first time on appeal, Castro Diaz also argues, and Gomez Rivera suggests, that insufficient evidence supported their convictions.

## II.

We generally review a district court's denial of a motion to dismiss an indictment for abuse of discretion. *United States v. Farias*, 836 F.3d 1315, 1323 (11th Cir. 2016). A court abuses its discretion when it "applies an incorrect legal standard," and "[u]nder the abuse-of-discretion standard, [a] district court's underlying legal conclusions are reviewed *de novo*." *United States v. $70,670.00 in U.S. Currency*, 929 F.3d 1293, 1300 (11th Cir. 2019) (internal marks omitted)). Here, whether the statute of limitations barred the second superseding indictment—a question involving the "interpretation and application of a statute of limitations"—is an underlying legal question that we review *de novo*. *See Farias*, 836 F.3d at 1323.

We review for plain error unpreserved objections to the sufficiency of the evidence. *United States v. Zitron*, 810 F.3d 1253, 1260 (11th Cir. 2016).

## III.

The defendants make two arguments. First, they contend that the conspiracy count in the second superseding indictment should have been dismissed because it fell outside the statute of limitations. Second, they contend or hint that there was insufficient evidence to convict them of that count.

Before we can address either argument, we must determine whether Castro Diaz was convicted under the first superseding indictment (as the government argues) or the second superseding indictment (as Castro Diaz argues). We believe the district court's

references to "Count 1s" in Castro Diaz's written judgment and on the docket are merely clerical errors. *See United States v. Reeves*, 742 F.3d 487, 507 n.12 (11th Cir. 2014) ("We may *sua sponte* raise the issue of clerical errors in a judgment and remand with instructions that the district court correct them."). Although the judgment and docket entries mention "Count 1s," the judgment also states that Castro Diaz "was found guilty on Count One of the Second Superseding Indictment" and that the "[o]ffense [e]nded" on September 30, 2013—the date alleged only in the second superseding indictment. The record also makes clear that the government proceeded on the second superseding indictment at trial: the only reason the defendants opted for a stipulated bench trial was to preserve their motions to dismiss *that* indictment; and at sentencing, when Castro Diaz's counsel referred to the second superseding indictment as the "operating indictment in this case," no one suggested otherwise. In short, despite the district court's apparent clerical error, we can safely say that Castro Diaz was convicted of the first count of the *second* superseding indictment, not the first count of the first superseding indictment.

We now ask whether the second superseding indictment's conspiracy charge should have been dismissed as untimely under the applicable statute of limitations and whether the evidence underlying the defendants' convictions was sufficient. We take each issue in turn.

23-10690                Opinion of the Court                9

*A.*

We begin with the defendants' motions to dismiss the second superseding indictment as untimely. It is undisputed that the statute of limitations applicable to the indictment is five years. *See* 18 U.S.C. § 3282. Under section 3282, "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282. For a drug conspiracy case, which we have here, an indictment satisfies the five-year statute of limitations if it is returned within five years of the date it alleges the drug conspiracy took place. *See United States v. Harriston*, 329 F.3d 779, 783 (11th Cir. 2003); *United States v. Butler*, 792 F.2d 1528, 1532 (11th Cir. 1986); *United States v. Coia*, 719 F.2d 1120, 1124 (11th Cir. 1983).

A superseding indictment can satisfy the five-year statute of limitations in one of two ways. First, it can be independently timely—that is, it alleges that a crime took place within five years of the date the indictment was returned. Second, it can "relate back" to a timely prior indictment—that is, even if the superseding indictment is brought outside the five-year period, it satisfies the statute of limitations by relying on the timeliness of a prior indictment whose charges the superseding indictment "does not broaden or substantially amend." *Italiano*, 894 F.2d at 1282. *See Ratcliff*, 245 F.3d at 1253; *United States v. Phillips*, 843 F.2d 438, 442 n.2 (11th Cir. 1988); *Edwards*, 777 F.2d at 649–50. Either route satisfies the statute of limitations.

Here, the second superseding indictment is independently timely. The defendants do not dispute—nor could they—that this indictment was returned within five years of when the indictment alleges the conspiracy took place. The indictment charged the defendants with a drug conspiracy "[b]eginning in or around January, 2008, and continuing until in or around September, 2013." The five-year limitations period thus began in September or October, 2013, and expired in September or October, 2018. *See Butler*, 792 F.2d at 1532 (stating that "the day following the event" giving rise to cause of action is the "beginning date for calculation"). The second superseding indictment was returned on July 19, 2018, well before the period expired.

The defendants argue, however, that the conspiracy count's independent timeliness alone does not satisfy the limitations statute. In their view, the government must also establish that the superseding indictment did "not broaden or substantially amend the original charges." *Italiano*, 894 F.2d at 1282. Put another way, they ask us to apply a rule requiring *both* timeliness *and* relation back. We decline to do so.

To start, such a rule is inconsistent with our precedent. In decision after decision, we have explained that relation-back analysis comes into play only if the superseding indictment is "brought after" the statute of limitations—in other words, *not* independently timely. *See Italiano*, 894 F.2d at 1282 ("A superseding indictment *brought after* the statute of limitations has expired is valid *so long as* . . . the superseding indictment does not broaden or substantially

amend the original [timely and pending] charges" (emphasis added)). *See also Ratcliff*, 245 F.3d at 1253; *Phillips*, 843 F.2d at 442 n.2; *Edwards*, 777 F.2d at 647, 649–50. We have also permitted superseding indictments to bring entirely *new* charges. *See, e.g.*, *United States v. Davis*, 854 F.3d 1276, 1291–92 (11th Cir. 2017); *United States v. Couch*, 906 F.3d 1223, 1226 (11th Cir. 2018). If a superseding indictment can bring entirely new timely charges—ones wholly different from those in previous indictments—there is no reason why a superseding indictment cannot broaden or amend existing charges as long as the superseding indictment is independently timely.

The defendants' proposed rule is also inconsistent with the point of relation-back analysis. We allow a superseding indictment to add otherwise untimely charges on the theory that the prior indictment already timely put the defendant on notice of the charges he needed to defend against. This rationale works, however, only "[i]f the allegations and charges are substantially the same in the old and new indictments." *Italiano*, 894 F.2d at 1283. For if the two indictments are quite different—if the new indictment "broaden[ed] or substantially amend[ed]" the old, *id.* at 1282—it would make no sense to say that the old indictment already notified the defendant of the *new* indictment's charges. But this rationale dissipates when a superseding indictment is filed within the statute of limitations. When a superseding indictment is returned within the limitations period, that indictment itself gives the defendants timely notice of what they must defend against. Nothing is gained by comparing the new allegations with the old ones.

The defendants advance three arguments for a ubiquitous relation-back rule, but each argument fails.

First, the defendants contend that such a rule is compelled by language in *Edwards* and *Ratcliff*. We disagree.

In *Edwards*, although a superseding indictment added tax charges that were timely, we nevertheless stated that those added charges "did not improperly broaden or amend the original charges." 777 F.2d at 649. The defendants say that, through this statement, we adopted their proposed rule—that superseding indictments can never substantially broaden or amend old ones. We find this reading of *Edwards* unpersuasive. *Edwards* stated that the tax charges did not "improperly" broaden or amend the original charges. *Id.* The word "improperly" suggests that the tax charges *did* broaden or amend the original charges—drug conspiracy charges having little to do with taxes—but did so properly. And the tax charges did so properly because they were timely returned: they "put the defendants on notice, in a timely manner, of those charges against which they had to defend." *Id.* at 649. In other words, nothing we said in *Edwards* prohibited superseding indictments that are independently timely from substantially amending previous charges.

The defendants similarly misread *Ratcliff* and argue that we applied relation-back analysis to an otherwise timely superseding indictment. In *Ratcliff*, the superseding indictment was returned on August 19, 1998, and charged a defendant with drug conspiracy "'[b]eginning in 1980 and continuing through 1993.'" 245 F.3d at

1248, 1252–54. Although 1998 is five years from 1993, other details in *Ratcliff* reveal that the superseding indictment was not returned within the five-year period. For one, the parties in *Ratcliff* "agree[d] that Ratcliff's proven criminal activity ended, at the latest, by April of 1993"—more than five years before August 1998 when the superseding indictment was returned. *See Ratcliff*, 245 F.3d at 1252. Moreover, we set up our relation-back analysis in *Ratcliff* with our standard rule—that "'[a] superseding indictment brought *after* the statute of limitations has expired is valid *so long as*'" that indictment does not "'broaden or substantially amend'" the charges in a timely, still-pending original indictment. *Id.* at 1253 (emphasis added) (quoting *Italiano*, 894 F.2d at 1282). All told, it strains credulity to believe that this Court in *Ratcliff* conducted relation-back analysis on a timely superseding indictment.

In any event, we are bound to follow the holdings in our prior opinions, not every stray sentence. *See United States v. Files*, 63 F.4th 920, 923 (11th Cir. 2023). And it is beyond dispute that neither *Edwards* nor *Ratcliff* held that timely charges in a superseding indictment are untimely unless they also relate back to the charges in an earlier indictment. Any language that suggests otherwise is, at most, dicta that neither this Court nor any other court need follow.

Second, the defendants argue that out-of-circuit precedents support a ubiquitous relation-back requirement. Again, the defendants are wrong. They point to *United States v. Hance*, where the Eighth Circuit stated that a superseding indictment "'relates back to the time of filing of the original indictment if it does not

substantially broaden or amend the original charges.'" 501 F.3d 900, 905 (8th Cir. 2007) (quoting *United States v. Gomez*, 38 F.3d 1031, 1036 n.8 (8th Cir. 1994)). But *Hance* never imposed a relation-back analysis on *all* superseding indictments. Instead, it assessed whether a superseding indictment that was filed "six days after the statute of limitations expired" substantially broadened the timely-filed original indictment. *Id.* Similarly, the defendants point to *United States v. O'Bryant*, where the First Circuit assessed whether a superseding indictment materially broadened charges in an original indictment. *See* 998 F.2d 21, 23–25 (1st Cir. 1993). But in *O'Bryant*, the First Circuit held that even if the superseding indictment was, as the defendant alleged, returned outside the limitations period, the indictment was still not time-barred because it could rely on the "filing date of the original indictment." *Id.* at 24–25 & n.3 ("[W]e rule that the superseding indictment was not time-barred even if O'Bryant's active participation in the conspiracy ended in 1985.").

Third, Gomez Rivera (but not Castro Diaz) argues that we should impose a relation-back analysis on all superseding indictments for fairness reasons. Specifically, he argues that if a timely superseding indictment need not relate back to a previous indictment, the government would have carte blanche to extend a statute of limitations "merely by expanding the period of a conspiracy in a superseding indictment" into the limitations period. We disagree. The statute of limitations requires the government to timely press charges, but other limitations on the government ensure that it presses only charges that it can prove. To obtain a superseding

indictment, the government must convince a grand jury. And to obtain a conviction on a superseding indictment's non-overt-act conspiracy charge—the kind of charge the parties agree was brought here—the government must "prove[ ] that the conspiracy continued into the limitations period" as alleged. *Harriston*, 329 F.3d at 783; *see also Butler*, 792 F.2d at 1532. So, in the end, the government can only change the date of the charged offense if it has evidence to convince a grand jury to indict and ultimately a petit jury to convict as charged.

In sum, the second superseding indictment's conspiracy charge was not barred by the five-year statute of limitations. A superseding indictment can satisfy the statute of limitations in 18 U.S.C. § 3282 in two ways: it can *either* be independently timely *or* rely on a timely prior indictment whose charges it does not broaden or substantially amend. It need not do both. Here, the second superseding indictment's conspiracy charge was independently timely.

*B.*

The next question is whether the government proved the conspiracy it charged. *See Harriston*, 329 F.3d at 783; *Butler*, 792 F.2d at 1532. It did. For both defendants, sufficient evidence proved that the conspiracy continued into September 2013 as the second superseding indictment alleged.

We begin with Gomez Rivera. To the extent he makes a sufficiency challenge, we review it for plain error because he made no such challenge below. *See Zitron*, 810 F.3d at 1260. True, Gomez

Rivera renewed his pretrial motion to dismiss, which argued that the second superseding indictment was returned after the statute of limitations; but he never argued below that the evidence failed to prove that his involvement in the conspiracy continued into the limitations period. To the contrary, he agreed below that there was "enough of a factual basis for the Court to find" that he "conspired to distribute" cocaine, "knowing and intending that it would be unlawfully imported into the United States," in violation of 21 U.S.C. §§ 959 and 963. Because he agreed below that the facts were sufficient for the court to find him guilty, we reject the idea that he argued below that those same facts were *not* enough to prove guilt.

The district court did not plainly err in adjudicating Gomez Rivera guilty of engaging in a drug conspiracy into September 2013. Gomez Rivera stipulated that "[b]eginning in or around January, 2008 and continuing until in or around September, 2013, . . . [he] helped co-conspirators to facilitate the acquisition, protection, and transportation of multiple-thousand kilograms of cocaine for the purpose of importing said cocaine into the United States." And at the bench trial, he agreed that the government would "be able to prove beyond a reasonable doubt" that he conspired to help transport cocaine for import into the United States, "beginning in or around January 28th and continuing until on or around September 13th, September of 2013." Gomez Rivera says this evidence did not refer to the Manatee, but it need not have: under plain error review, the evidence proved that he participated in a drug conspiracy from January 2008 to September 2013 as alleged by the second superseding indictment.

We next turn to Castro Diaz. We also review his sufficiency challenge for plain error because he failed to make this challenge before the district court, *see Zitron*, 810 F.3d at 1260, and because— to the contrary—he agreed below that there was "enough of a factual basis" for the court to find that he conspired to distribute cocaine in violation of 21 U.S.C. §§ 959 and 963. Castro Diaz says he raised a sufficiency challenge below when, at the end of the bench trial, he sought to renew his "defense on the violation of [the] statu[t]e of limitations" and asked the district court to "deem it renewed at the end of the Government's case." But none of this dialogue is about the sufficiency of evidence: it was simply Castro Diaz renewing the statute of limitations argument that he made in his pretrial motion to dismiss. And that defense, like Gomez Rivera's, was that the second superseding indictment was not timely returned. Castro Diaz did not attack the strength of the bench trial evidence.

Under plain error review, the evidence underlying Castro Diaz's drug conspiracy conviction was sufficient. The government must prove that a defendant joined a conspiracy, and once it does, the "conspiracy is deemed to have continued as long as the purposes of the conspiracy have neither been abandoned nor accomplished and the defendant has not made an affirmative showing that the conspiracy has terminated." *Harriston*, 329 F.3d at 783. "A defendant can overcome" the "presumption of [his] continued participation only by showing that he affirmatively withdrew from the conspiracy or that the final act in furtherance of the conspiracy has occurred." *Id.*; *see also United States v. Arias*, 431 F.3d 1327, 1340

18                    Opinion of the Court                    23-10690

(11th Cir. 2005) (accused conspirator's participation is presumed to have continued until "the last overt act has been committed by any of the conspirators"). Withdrawal is an "affirmative defense, which the defendant has the burden of proving by a preponderance of the evidence." *United States v. Bergman*, 852 F.3d 1046, 1061 (11th Cir. 2017).

Here, the evidence established that Castro Diaz joined a drug conspiracy to import cocaine into the United States. Castro Diaz stipulated that there was "enough of a factual basis for the Court to find" that he "conspired to distribute" cocaine, "knowing and intending that it would be unlawfully imported into the United States"; and, he admitted that he helped co-conspirators transport cocaine in April 2013. Castro Diaz offered no evidence that he affirmatively withdrew from the conspiracy five years before the second superseding indictment was returned. *See Harriston*, 329 F.3d at 783. Nor did he establish that the conspiracy itself had ended by then—or put differently, that "the final act in furtherance of the conspiracy" had been committed. *See id.*; *Arias*, 431 F.3d at 1340. And to the contrary, Gomez Rivera's stipulation that he "helped co-conspirators" acquire and transport cocaine "until in or around September, 2013," was evidence that the conspiracy—and Castro Diaz's involvement in it as a "co-conspirator[ ]"—continued into September 2013. In short, Castro Diaz has not overcome the presumption that his participation in the conspiracy continued into the limitations period.

In Castro Diaz's view, however, our caselaw compels the conclusion that his role in the conspiracy ended no later than April 2013. First, he references *United States v. Knowles*, which stated that "[a] conspiracy ends after the central purposes of a conspiracy have been attained." 66 F.3d 1146, 1155 (11th Cir. 1995) (internal marks omitted). And here, he argues, his "role" in the drug conspiracy was accomplished—that is, "ha[d] been attained," *see id.*—when he helped transport cocaine in April 2013. Second, he directs us to cases where a drug conspiracy terminated when a vessel was seized, and says that here, the Manatee was seized in April 2013. *See Butler*, 792 F.2d at 1531–32 (a "conspiracy was terminated" on the day the Coast Guard seized a vessel carrying drugs); *United States v. Barnes*, 586 F.2d 1052, 1059 (5th Cir. 1978) (conspiracy ended when "the cocaine had been confiscated" and two co-conspirators had been arrested).

These decisions may add to Castro Diaz's argument, but they do not establish plain error. "To establish plain error, a defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights." *United States v. Harris*, 7 F.4th 1276, 1285 (11th Cir. 2021). "A plain error is an error that is obvious and is clear under current law." *United States v. Humphrey*, 164 F.3d 585, 588 (11th Cir. 1999) (internal marks omitted).

Here, considering the authorities Castro Diaz cites as well as our precedent on conspiracy withdrawal, we cannot say it is obvious and clear that his involvement in the conspiracy ended in April 2013. To start, we said in *Knowles* that a conspiracy ends when the

conspiracy's central purposes have been attained. 66 F.3d at 1155. But we never said that we must treat a conspirator's last identifiable act in the conspiracy as the end date of his participation. To the contrary, our withdrawal precedent presumes that a conspirator's participation continues unless he affirmatively establishes withdrawal. *Harriston*, 329 F.3d at 783; *Bergman*, 852 F.3d at 1061. Further, although the conspiracies in some of Castro Diaz's cited cases ended when a drug vessel was seized, *see Butler*, 792 F.2d at 1531–32 and *Barnes*, 586 F.2d at 1059, we never established a rule that the seizure date of a single vessel is always the date an entire drug conspiracy ends. And here, Gomez Rivera's stipulation that he "helped co-conspirators" to acquire and transport cocaine "until in or around September, 2013," indicates that the drug conspiracy continued after the Manatee was seized in April 2013. Ultimately, under plain error review, Castro Diaz has not overcome the presumption that his participation in the drug conspiracy continued into the limitations period. We reject his sufficiency challenge.

## IV.

We **AFFIRM** the convictions and sentences of both defendants, but **REMAND** for the limited purpose of correcting the clerical errors in Castro Diaz's written judgment and on the docket.